Our first case up today is People of the State of Illinois v. Maurice Jake. Attorney Thomas Bruno is here on behalf of the appellant, and Attorney James Majors is here on behalf of the FGLE. Mr. Bruno, you may proceed. Thank you, Your Honor. Good morning. May it please the Court, Justices, Mr. Majors. The first thing I would remind the Court of is that while I am now Mr. Jake's counsel, I was not his counsel when the original appellant's brief was prepared and filed. That's not my work. I did the reply brief. And I say that because I think that my focus may have been slightly different, although I don't think the focus of the original brief was defective in any way. I'd like to think that this whole case is touched by the problem that occurs when a pro se litigant wants to throw the kitchen sink at the Court. And so while this Court should take a new look at whether or not that pro se, handwritten, 27-page long, post-conviction petition stated an arguable claim, one of the things that people, advocates, sometimes do to their detriment is try to include every conceivable argument. And so Mr. Jake buried probably his best argument on page 23 of his handwritten post-conviction petition. But it was in there. And it was on his handwritten pro se petition where Mr. Jake says, trial counsel should have objected because this photo used at defendant's trial had nothing to do with the crime defendant was being tried for. And then a couple of pages, or the next page is handwritten, page 24. Trial counsel did nothing, failed to object to any of the state's abuse. Counsel never objected to the photo array that the state presented to the jury, never objected. And then the next page. Appellate counsel also failed to raise any issues set forth in defendant's post-trial motion on direct appeal, nor did appellate counsel never once raise for review the court violated the motion in limine by introducing prior bad acts. That argument, had it been succinctly stated in a much shorter pro se petition, would clearly have caught the court's attention, should have caught the court's attention, and arguably states a claim for relief under the Post-Conviction Act. The defendant's claim in a nutshell, Mr. Jake's claim, is that despite the fact that a motion in limine had been granted, barring evidence of other injuries, his trial counsel did nothing to preserve the benefit she had obtained by winning that motion in limine. She then allows these photographs, one is exclusively of a black guy, not the charged crime. She allows it to go back to the jury room for the jury's deliberations. That was defective, and in a case like this, where so much of what Mr. Jake is concerned with, turns on the finding of great bodily harm, and it's a case involving bruising and bodily harm. Mr. Bruno, did you get a chance to look at the pictures? I did, yes, I did. I think there was more than bruising, there was swelling of her hand and her arms, there was bruising all over her arms and hands, her arm and hands. But, I would argue... Putting aside the black guy. Yes, Your Honor, there was. But cases that attempt to define what do we mean by great bodily harm are difficult. They're all over the board. And I think in a case that's visual, with a lot of bruises, it's measured in square inches almost, in a jury's mind, or arguably could be. And a photograph of exclusively her face, with a black eye, that's not the charged offense here, had no business going back to the jury. Was the court's ruling correct with respect to the motion in limine? Couldn't the court have ruled that evidence of prior domestic violence acts would come in, because the statute allows that? It could, and it did, and that would be a proper exercise of the court's discretion. But once the court ruled, mostly in Mr. Jake's favor, but I'm not going to allow these, I'm only going to allow this for showing that there was previous abuse, domestic abuse. Then, having defense counsel not seek, never sought limiting instruction, never sought, and could have easily. Defense counsel knew the court had ruled, and ruled in her favor. What would the limiting instruction have been? The court's limiting instruction could have been, the jury is going to be shown some photographs, you're not to take these into consideration for anything other than that there was a pattern of prior abuse. But the court... So you would be calling attention to the fact that in addition to what he did to her on the date in question, he also gave her a black eye. I mean, you'd be highlighting with the limiting instruction, wouldn't you? Well, possibly. Who else could have done it? Because unless... And, Your Honor, your client might then get convicted of domestic violence. But the issue in this case was, was it a domestic battery with great bodily harm? So you would be able to argue to the jury, you can take that into consideration, and you should take that into consideration in your determination of whether or not he committed a domestic battery on February 23rd. But you shouldn't take it into consideration in determining whether or not the February 23rd domestic battery caused great bodily harm. You should not be adding up events from other dates towards a measurement of, is this amount of great bodily harm? Well, if... Is it possible that a defense attorney could say to himself or herself and to the client, if we give a limiting instruction, we're going to be highlighting the fact that we acknowledge that you gave her the black eye, and the black eye was earlier, and we already know that some of this evidence is going to be that you had a tumultuous relationship, so we would actually be highlighting that. So maybe it would be better not to say anything, and just hope that the jury considers the evidence the way it's supposed to. And if the answer to that is yes, you already know then what my response is. That's trial strategy. But that question of whether or not this is proper trial strategy is best adduced at a hearing on the post-conviction petition. And that's what we're here for. Was this arguably a claim of ineffective assistance counsel? Yes. And you and I may have a discussion right now about what would good strategy have been. But it's arguable that this was bad strategy. It's arguable that this was ineffective assistance counsel. If I were defending this case, I'd be very concerned about evidence that went to the breadth of the injuries, because I would know, boy, there's going to be a big difference between whether the jury finds great bodily harm or not. I'll let them find domestic battery, but I don't want them to find that there was great bodily harm on February 23rd. So my big goal would be, let me win a motion and eliminate that these can't be talked about by the prosecutor, but he can't talk about injuries to the leg or the chest or the face. But the statute itself, there's a statute that permits evidence of prior domestic violence acts. So I don't understand, even if, and I'm not saying it was, but even if the motion to eliminate was violated, doesn't that matter, that the statute permits this evidence? Well, I would say that if the motion to eliminate were violated, then counsel should have preserved that pretrial victory, should have saved the benefit that inured your client when the judge exercised his discretion and heard a motion to eliminate and ruled mostly in the defendant's favor. I'm going to let this in, I'm not going to let that in. Once you score that victory, you have to cherish it, preserve it, or you're arguably being ineffective. And perhaps at a hearing on the merits of this case, perhaps someone trying to defend this conviction could prove that it was just a trial strategy. But that's what a hearing would be needed for. Not that this petition didn't arguably state the gist of the claim. In the petition he says, trial counsel shouldn't have let those pictures go back to the jury. Trial counsel should have preserved my motion to eliminate. Trial counsel shouldn't have done this and that. That's stating the gist of a claim. And this court should look at that with a fresh set of eyes and should determine that this 27-page pro se petition that throws in everything including the kitchen sink had in there the gist of an arguable claim for a post-conviction relief. And the court should have allowed it to go past the first stage. We're not here today to determine whether this post-conviction petition wins or loses. Just whether it should have been tossed out at this very preliminary stage without ever having the discussion about what was your strategy, counsel? Why didn't you object? Why did you let a picture of just a black eye go back into the jury room for deliberation? Well, Mr. Bruno, the trial court had ruled that evidence of the abusive relationship was admissible. What the trial court ruled was specific evidence about prior bad acts would not come in. And so there was no testimony about what happened on those other occasions when she got the black eye. Couldn't counsel have thought perhaps that the motion in limine was not being violated? The picture showed her condition on the date in question after she was at the hospital. It showed her condition that day. Why wouldn't they be admitted anyway? That's how she looked that day. It's possible that that's what went through counsel's mind. But instead of us sitting back and trying to guess what the evidence would have been at a hearing, and maybe Mr. Jake would have lost this post-conviction petition, I think the test for this court is, is it an arguable claim that he might not have lost? Is it arguable that his petition had merit? Is there the potential, when he elicits the evidence, why did you let this picture of a black eye go back to the jury? When I think the testimony in the record was confusing at best about when exactly did she get the various different bruises. And it allowed the jury to start to accumulate these bruises. And then the big test for the jury, they may not even realize that this was their big test, is this great bodily harm or not? Well, they've got pictures of leg injuries, eye injuries. But what did she testify to? She testified to the incident that occurred in the car, didn't she? Yes. And she testified he punched her repeatedly in her arm and on her hand and on her legs. Yes. So they didn't hear any testimony about how she got the black eye. That's correct. But I think that makes it even more dramatic that counsel should have said, well, I don't want that picture of the black. If you look at the colloquy, thank you, Your Honor. If you look at that about what pictures should go back to the jury, she basically gives up at that point. You know, send them all back. And arguably that's deficient performance by counsel that had already prevailed on a motion in limine. She sort of says, well, let them all go back. Now, perhaps we would have a hearing on this post-conviction petition, and she'd be able to defend her actions or the prosecutor would be able to have her explain that this was some clever trial strategy. But perhaps not. And did Mr. Jake arguably state a claim that he was denied effective assistance of counsel and that his appellate counsel, who went into sentencing matters on direct appeal, the abuse of discretion was argued, the amount of some monetary fines were argued, went into sentencing issues but didn't say that there was, you know, the great bodily harm thing really cost Mr. Jake and it was a result of trial counsel's deficient performance. Mr. Bruno, there are two prongs to Strickland, though. The second one is prejudice. Yes. And if we were just here today to see whether or not he'd been proven guilty of a domestic battery, you might argue, eh, you know, he wasn't prejudiced by this. But the grander thing and the thing that's of much more import to Mr. Jake, frankly, is was it domestic battery that caused great bodily harm? And there's actual prejudice there. When bruising is cumulative, this is not a fractured bone. This is not a cut. It's an area of bruising. And the bigger the area, the more spread out. I think it's not unreasonable to think that a trier of fact would say, wow, that's great bodily harm. That one bruise isn't. The six bruises are. So why do you let the picture of a black eye and a bruised leg go back when that's not the charged crime in this case? And you've prevailed on a motion in limiting. You've prevailed. The information didn't charge him with punching her in the arm. It said he punched her. It wasn't limited to the arm. But it was limited to February 23rd. And her testimony was also that he punched her in the leg on that day. Her arm, her hands, her leg. I may be mistaken, but that's not. And my reflection may not be perfect on that either. But clearly there's no testimony that he punched her in the eye on February 23rd. And there's one picture that is exclusively her face. And it makes you scratch your head to wonder, why would defense counsel in a criminal case where a big issue is great bodily harm allow that to go back? But we're losing sight, or I think we're at risk of losing sight, of the fact that should this have gone to a hearing? Was the trial court judge, did he make error when he said, I'm going to throw this out. This is frivolous. There's no, it's patently without merit. Well, it may be without merit, but it's not patently without merit. And it may be a loser, but it's not frivolous. When Mr. Jake articulates that trial counsel shouldn't have sent those pictures back, trial counsel shouldn't have let this evidence come in, and appellate counsel should have raised this issue, that's what gets you to a hearing. Otherwise, we're just ruling on all of these at the frivolous stage, at the first stage. Anyway, that's my argument, Your Honor. And I appreciate the court's questions. I hope I've answered them. Thank you very much. Thank you, Mr. Bruno. And you'll have time on rebuttal. Mr. Majors. I'm going to adjust this just a little bit higher. May it please the court, counsel, I'm trying to pick up the points that the court made here without starting all over again. Counsel kept saying, why did counsel do this, why did counsel do that. Excuse me. I think the overall record shows that Mr. Jake had no defense and chose voluntarily not to testify and counsel the strategy, which Justice Connex already commented on. It was clear to go for the middle ground, which was battery, and she was successful in getting instructions on battery as applied to both the felony counts. And part of her strategy was consistent with that, was that there was no doctors that testified, no nurses that testified, no medical technicians that testified. The victim stated she bled and then later said she didn't bleed, so she was inconsistent. And the pictures themselves don't show any bleeding. The pictures themselves don't show any broken bones or the things we commonly associate with great bodily harm. Also defense counsel's strategy was that the victim had hidden motives, wanted to get rid of Mr. Jake, cleaned out his checking account, et cetera, et cetera, et cetera. And a persistent theme of hers was that these bruises, particularly to the right arm, don't match a fist or a hand. And then if you look at them, there's striation marks. So at least in layman's terms, some of them don't match that. So the pictures were consistent with defense counsel's trial strategy, pointing out that the victim made inconsistent statements and of the strategy of trying to get a lesser included instructions in, which she did, and have him convicted of a lesser crime, which would not have exposed him to this sentence that he finally received. So when he keeps saying, why did she do this, why did she do that? Well, it was all part of strategy. Now is a poor time to question strategy, and questioning strategy doesn't meet either prong of Strickland. This black eye, the least disturbing photograph in here besides the text messages from defendants saying he's going to beat the victim, was the black eye. I can't imagine that that photograph would have any effect on anybody. But even so, the statute allows today. It's a new day. You want to beat up your wife? You want to beat up your girlfriend? They're going to bring in prior incidences. And that's what happened here. And that's what the judge's ruling was. The motion in limine wasn't violated. The judge said, you can't chapter and verse bring out this stuff. And the prosecutor didn't. The prosecutor just brought out the relationship from a few days before. And I was glad to hear defense counsel. By the way, I think all three lawyers have done everything they could for Mr. Jake. The trial lawyer and the two appellate lawyers have done everything they could for Mr. Jake. But the facts don't favor him. But I was pleased to see that appellate counsel arguing admitted it is in the record that he hit her in the leg. And all the photos, four, three, two, and one, they're all admissible evidence. Neither prong here of Strickland is met. One, it was strategy. Two, the evidence was overwhelming. Any questions? What would be the strategy for defense counsel to allow the picture of the black eye to be sent back to the jury? I think that's a valid point. That wasn't part of – that's something that probably shouldn't have went back. But my point is, it wouldn't make any difference. I don't know if you've seen it, Judge, and I know you don't have more time to show it. But what is it? It's just not much at all compared to the other. You're going to tell me that this is going to throw the jury into an emotional state where they can't analyze the evidence, this little mark on her eye? And it was in the evidence that he did that to her on Valentine's Day. That is in the record. That was her Valentine's Day present from him. So any other questions? Thank you. Thank you, Mr. Majors. Mr. Bruno, any questions? Mr. Majors says he had no defense. Well, he may not have had much of a defense to domestic battle. But he had a defense to the great bodily arm type prong of that charge, which made a great deal of difference to the outcome. The practical outcome for him in this case. So he had a defense. Mr. Majors says, now's a poor time to question strategy. Well, the time to question strategy is at a hearing on the merits of a post-conviction petition. Then it's fair game. And we never got to that hearing. Even though Mr. Jake arguably stated that my counsel was deficient by the Strickland standard, the time to question strategy would be a hearing on the merits in the trial court with witnesses called, including the trial defense attorney, to talk about strategy. Perhaps it is defensive. But it's not. Now's not the time for us to guess about it. Is it in the record that the black eye or the mark on the eye was caused at an earlier time? Yes, Your Honor. I think it's indisputable that that was alleged to have occurred on February 14th. The charges were February 23rd. So without regard to statute, motions in the limine and so forth, there was testimony in the record that the black eye, which you suggest is the prejudicial photograph, that the fact finder knew that that was from a prior incident. Well, you know, the professionals in the courtroom knew that. Whether that got lost on the jury, who knows. But they could have. We should say that in all cases. That's true. But that's the real role of a trial lawyer in the courtroom, is how is this going to be received by the jury? And that's why we practice in a courtroom a little bit differently in a bench trial than in a jury trial. Because you have to be concerned about the fact that if I send back seven photos, are all of these people trying their best as jurors going to be able to make the same legal distinctions, sort things out? And, you know, a good criminal defense attorney keeps in mind that, no, they're not perfect. I better not let them see this picture of the black eye because they may fail to sort it out in their minds. That's why it's maybe more prejudicial than probative. Well, Mr. Majors said it with a degree of sarcasm that was appropriate. But an ordinary person sitting on a jury that heard he gave her a black eye on Valentine's Day is not likely to forget that detail. That's an anecdotal detail that common sense would tell us would stick in somebody's mind. But I understand your point about trial counsel still wanting to lessen the impact of that by not letting the photo go back. Thank you. Thank you, counsel. The matter will be taken under advisement. We will recess until the next case.